UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 8:22 cr 132 WFJ - AAS

18 U.S.C. § 1344

CHARLES CUNNINGHAM

## INDICTMENT

The Grand Jury charges:

## COUNTS ONE THROUGH FOUR
### (Bank Fraud)

### A.   Introduction

At times material to this Indictment:

The Defendant and his Business Operations

1.     CHARLES CUNNINGHAM resided in Brooksville, Florida, which

was within the Middle District of Florida.

2.     In or around August 2010, CUNNINGHAM established a Florida

company known as Tampa Studio of Design, LLC ("TSD"), and listed himself as

TSD's manager.  On or about June 22, 2020, CUNNINGHAM reinstated TSD, and

listed a principal place of business as CUNNINGHAM's residence in Brooksville,

Florida.   CUNNINGHAM was an authorized signer on TSD's bank accounts at

Financial Institution 1 ending in #0798 and #0905.

3.     In or around July 2012, CUNNINGHAM established a Florida

company known as Furniture Now Home Accessory Center, LLC ("FNHAC"), and

listed himself as FNHAC's manager.  On or about May 1, 2019, CUNNINGHAM changed the address of the principal place of business to his residence in Brooksville, Florida.  CUNNINGHAM was an authorized signer on FNHAC's bank accounts at Financial Institution 1 ending in #7713 and #7784.

4.      In or around November 2017, CUNNINGHAM established a Florida company known as Brook Now, LLC ("BN"), and listed himself as the authorized representative.  On or about August 4, 2020, CUNNINGHAM reinstated BN, and listed a principal place of business as CUNNINGHAM's residence in Brooksville, Florida.  CUNNINGHAM was the sole authorized signer on BN's bank accounts at Financial Institution 1 ending in #1632 and #1807.

5.      In or around November 2017, CUNNINGHAM established a Florida company known as Now Furniture, LLC ("NF"), and listed himself as the authorized representative.  On or about October 10, 2020, CUNNINGHAM reinstated NF, and listed a principal place of business as CUNNINGHAM's residence in Brooksville, Florida.  CUNNINGHAM was the sole authorized signer on NF's bank accounts at Financial Institution 1 ending in #8533 and #8601.

The Paycheck Protection Program

6.      The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government-backed guarantees.

7.     In March 2020, the Coronavirus Aid, Relief, and Economic Security Act, or the "CARES Act," was enacted to provide immediate assistance to individuals, families, and organizations affected by the COVID-19 emergency. Among its various provisions, the CARES Act authorized the SBA to guarantee loans under the Paycheck Protection Program ("PPP"), and the full principal amount of the loans could qualify for forgiveness.

8.     Borrowers were required to use PPP loan proceeds only for enumerated purposes, including payroll costs, rent and utilities, and mortgage interest payments. Knowing misuse of PPP funds would subject borrowers to additional liability, such as charges for fraud.

9.     Under the PPP, the maximum loan amount was the lesser of $10 million or an amount calculated using a payroll-based formula specified in the CARES Act. The payroll-based formula considered the borrower's total payroll costs from the preceding twelve months for all domestic employees. Once an average monthly payroll cost was established, the borrower would multiply that figure by 2.5 to arrive at a total maximum PPP loan amount.

10.     To apply for a PPP loan, a potential borrower electronically submitted an SBA Form 2483 with supporting payroll documentation to a financial institution that would administer the loan and serve as custodian of the funds. On the SBA Form 2483, an authorized representative of the business was required to certify

3

As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government-backed guarantees.

7.     In March 2020, the Coronavirus Aid, Relief, and Economic Security Act, or the "CARES Act," was enacted to provide immediate assistance to individuals, families, and organizations affected by the COVID-19 emergency. Among its various provisions, the CARES Act authorized the SBA to guarantee loans under the Paycheck Protection Program ("PPP"), and the full principal amount of the loans could qualify for forgiveness.

8.     Borrowers were required to use PPP loan proceeds only for enumerated purposes, including payroll costs, rent and utilities, and mortgage interest payments. Knowing misuse of PPP funds would subject borrowers to additional liability, such as charges for fraud.

9.     Under the PPP, the maximum loan amount was the lesser of $10 million or an amount calculated using a payroll-based formula specified in the CARES Act. The payroll-based formula considered the borrower's total payroll costs from the preceding twelve months for all domestic employees. Once an average monthly payroll cost was established, the borrower would multiply that figure by 2.5 to arrive at a total maximum PPP loan amount.

10.     To apply for a PPP loan, a potential borrower electronically submitted an SBA Form 2483 with supporting payroll documentation to a financial institution that would administer the loan and serve as custodian of the funds. On the SBA Form 2483, an authorized representative of the business was required to certify

and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

The PPP Lenders and Processor

14.     Financial Institution 1 was a financial institution as defined in 18 U.S.C. § 20, insured by the National Credit Union Administration ("NCUA"). Financial Institution 1 participated in the SBA's PPP as a lender, and as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

15.     Financial Institution 2 was a financial institution as defined in 18 U.S.C. § 20, insured by the Federal Deposit Insurance Corporation ("FDIC"). Financial Institution 2 participated in the SBA's PPP as a lender, and as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

16.     Processor 1 was a New Jersey fintech company that provided online business banking and financing solutions to businesses.  Processor 1 processed SBA-guaranteed PPP loans, including for Financial Institution 2.

### B.     The Scheme and Artifice

17.     Beginning in or about March 2020, and continuing through at least in or around August 2021, in the Middle District of Florida, and elsewhere, the defendant,

CHARLES CUNNINGHAM,

did knowingly and intentionally devise and intend to devise a scheme and artifice to defraud financial institutions, as defined in 18 U.S.C. § 20, and to obtain money, funds, credits, assets, and other property owned by, and under the custody and

control of, the financial institutions, by means of materially false and fraudulent pretenses, representations, and promises.

### C.    Manner and Means of the Scheme and Artifice

18.    The manner and means by which the defendant sought to accomplish the scheme and artifice to defraud included, among others, the following:

a.    It was part of the scheme and artifice that the defendant would and did reinstate companies that had been administratively dissolved prior to January 2020 for his failure to file annual reports.

b.    It was further part of the scheme and artifice that the defendant would and did submit and cause the submission of false and fraudulent PPP loan applications to the financial institutions, on occasion through a processor, on behalf of the companies.

c.    It was further part of the scheme and artifice that the defendant would and did falsely and fraudulently certify that among other permitted purposes, the PPP funds acquired from the requested loans would be used to pay for "Payroll," "Lease/Mortgage Interest," and "Utilities."

d.    It was further part of the scheme and artifice that the defendant would and did make materially false and fraudulent representations to financial institutions during the SBA PPP loan application process, which caused the approval of PPP loans for PPP funds that were deposited into bank accounts under the defendant's control at Financial Institution 1.

6

e.     It was further part of the scheme and artifice that the defendant would and did transfer the PPP funds between business accounts and personal bank accounts that he controlled at Financial Institution 1.

f.     It was further part of the scheme and artifice that the defendant would and did use the PPP funds, and cause the PPP funds to be used, for unauthorized purposes and for his own personal enrichment and the enrichment of others.

g.     It was further part of the scheme and artifice that the defendant would and did misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the purpose of acts performed in furtherance of the scheme to defraud.

**D.     Execution of the Scheme and Artifice**

19.     On or about the date set forth in each count below, in the Middle District of Florida and elsewhere, the defendant,

CHARLES CUNNINGHAM,

knowingly executed and attempted to execute the aforesaid scheme and artifice by submitting, and willfully causing to be submitted, a false and fraudulent PPP loan application on behalf of the listed company to a financial institution, as further detailed:

7

| Count | On or About Application Date | Company | Lender |
|-------|------------------------------|---------|--------|
| **ONE** | March 1, 2020 | Furniture Now Home Accessory Center, LLC | Financial Institution 1 |
| **TWO** | June 29, 2020 | Tampa Studio of Design, LLC | Financial Institution 1 |
| **THREE** | August 4, 2020 | Brook Now, LLC | Financial Institution 1 |
| **FOUR** | February 2, 2021 | Furniture Now Home Accessory Center, LLC | Financial Institution 2 |

All in violation of 18 U.S.C. §§ 1344 and 2.

## FORFEITURE

1.      The allegations contained in Counts One through Four are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 982(a)(2)(A).

2.      Upon conviction of a violation of 18 U.S.C. § 1344, the defendant,

CHARLES CUNNINGHAM,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), any property, real or personal, involved in such offense, or any property traceable to such property.

3.      The property to be forfeited includes, but is not limited to, an order of forfeiture in the amount of at least $397,459, which represents the proceeds obtained from the offenses

4.      If any of the property described above, as a result of any act or omission of the defendant:

     a.    cannot be located upon the exercise of due diligence;

     b.    has been transferred or sold to, or deposited with, a third party;

     c.    has been placed beyond the jurisdiction of the Court;

     d.    has been substantially diminished in value; or

     e.    has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

A TRUE BILL,

_____
Foreperson

ROGER B. HANDBERG
United States Attorney

By: _____
Tiffany E. Fields
Assistant United States Attorney

By: _____
Rachelle DesVaux Bedke
Assistant United States Attorney
Chief, Economic Crimes Section

9

FORM OBD-34
April 22

No.

# UNITED STATES DISTRICT COURT
### Middle District of Florida
### Tampa Division

## THE UNITED STATES OF AMERICA

vs.

## CHARLES CUNNINGHAM

## INDICTMENT

Violations: 18 U.S.C. § 1344

A true bill,

_____
Foreperson

Filed in open court this 6th day of April 2022.

_____
Clerk

Bail $_____

GPO 863 525